Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
Brandt Silver-Korn (SBN 323530)
bsilvercorn@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Antonio M. Romanucci (*pro hac vice pending*)
aromanucci@rblaw.net
Bryce T. Hensley (*pro hac vice pending*)
bhensley@rblaw.net
David A. Neiman (*pro hac vice pending*)
dneiman@rblaw.net
ROMANUCCI & BLANDIN, LLC
321 North Clark Street, Suite 900
Chicago, Illinois 60654
Tel: 312.458.1000
Fax: 312.458.1004

*Counsel for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DREW KRISCO, an individual, and LIVLY, INC., a Delaware corporation, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>LINKEDIN CORPORATION, a Delaware corporation,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) **Violation of Cal. Bus. & Bus. Prof. Code § 17200,** *et seq.*<br>(2) **Fraud**<br>(3) **Accounting**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Drew Krisco ("Krisco") and Livly, Inc. ("Livly") bring this Class Action Complaint and Demand for Jury Trial against Defendant LinkedIn Corporation ("LinkedIn") to seek compensation for Defendant overcharging advertisers and misrepresenting the reliability of the data produced by its advertising platform. Plaintiffs allege as follows upon personal knowledge as to

CLASS ACTION COMPLAINT

themselves and their own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. On November 12, 2020, Defendant LinkedIn stated on its own blog that "[i]n August, our engineering team discovered and then subsequently fixed two measurement issues in our ads products that may have overreported some Sponsored Content campaign metrics for impression and video views." Defendant revealed that these "issues" impacted hundreds of thousands of LinkedIn advertisers, undetected, over the span of at least two years.

2. Specifically, advertisers were overcharged and overpaid for advertisements on LinkedIn's platform, all while relying on LinkedIn's assurances that their advertising metrics were accurate and reliable.

3. While LinkedIn has tried to downplay the impact of this failure to monitor and control its own advertising platform, the total extent of the damage to their customers is not yet known. Nor is there conclusive proof that these problems have been fully rectified and that other unknown "measurement issues" may not lurk in its vast system.

4. Above and beyond simply overpaying for mismeasured ads, Plaintiffs and members of the Class paid for an unknown number of ineffective ads, losing out on the opportunity to serve effective ads that would have fulfilled the purposes of the advertisements. Had Plaintiffs and members of the Class known of the lack of reliability in choosing to place ads with LinkedIn, they would have taken their ad dollars to other competitive platforms.

5. Plaintiffs therefore bring this Complaint to seek compensation for the amount they were overcharged, as well as seek an accounting of their ad accounts, along with those of the Class, to ensure that the payments they have made are consistent with the services they received.

## PARTIES

6. Plaintiff Drew Krisco is a natural person and resident of the State of Illinois. Mr. Krisco is a current customer of Defendant LinkedIn.

CLASS ACTION COMPLAINT   2

7. Plaintiff Livly, Inc. is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located at 1325 West Randolph Avenue, Chicago, Illinois 60607. Livly is a current customer of Defendant LinkedIn.

8. Defendant LinkedIn Corporation is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located at 1000 West Maude Avenue, Sunnyvale, California 94085.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2) because, as to all proposed Class members, (a) at least one member of the Class, which consists of at least 100 members, is a citizen of a different state than Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

10. This Court has personal jurisdiction over Defendant because it transacts business in this State, and because the tortious conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this State.

11. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant conducts business transactions in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## FACTUAL BACKGROUND

12. LinkedIn is a global professional networking site, offering numerous professional services for job seekers, professionals, recruiters, and employers. With LinkedIn, users create an in-depth professional profile, and user information is standardized by education, profile headlines, profile experience and a customer's prior experience. LinkedIn has branded itself as "the place to find and be found."

13. With this enormous draw to facilitate networking, LinkedIn has over 706 million total users, with more than 260 million monthly active users. As such, this creates a robust and

CLASS ACTION COMPLAINT 3

active audience for an untold number of advertisers to buy a wide range of advertisements, a core aspect of LinkedIn's business model.

14. Not unlike with Facebook or Google, advertisers pay extortionary amounts to reach target audiences and rely on platforms like LinkedIn to be honest brokers in how they track, monitor, and charge for those ads. While advertisers have certain tools available to them to track their own ads, certain information can only be known and conveyed by LinkedIn itself, leaving advertisers in a vulnerable position to act in blind reliance on LinkedIn's own metrics and reporting.

15. In November of 2020, LinkedIn revealed that it had taken advantage of that vulnerability through its own failures to properly design and audit its advertising system.

16. In its own words, "In August, our engineering team discovered and then subsequently fixed two measurement issues in our ads products that may have overreported some Sponsored Content campaign metrics for impression and video views. Together these issues potentially impacted more than 418,000 customers over a two plus year period."[1]

17. Additional reporting on this issue revealed:

> With video ads, LinkedIn discovered that some organic videos and video ads would play while they were off-screen on Apple Inc.'s iOS devices.
>
> If a LinkedIn user scrolled past a video ad while the video was buffering, for example, the ad would autoplay even when out of view, but still be tracked and logged as a video view or completion.
>
> That may have resulted in overstated measures including video views and view-through rates, as well as overcharging advertisers paying by the view, according to a LinkedIn spokesman.
>
> The company also said it may have been overreporting impressions on sponsored-content campaigns in the LinkedIn feed—for example, in cases when users would rotate their phones or quickly move to other parts of the app, the spokesman said.[2]

---

[1] *We discovered two measurement issues. Here's how we're making it right.*, LinkedIn, https://business.linkedin.com/marketing-solutions/blog/linkedin-news/2020/how-we-re-working-to-improve.

[2] *LinkedIn Finds Measurement Errors That Inflated Video and Ad Metrics*, THE WALL STREET JOURNAL, https://www.wsj.com/articles/linkedin-finds-measurement-errors-that-inflated-video-and-ad-metrics-11605228577.

CLASS ACTION COMPLAINT 4

18. What's worse, based on publicly available information, LinkedIn allegedly discovered this issue in August 2020, but waited at least *two months* to fix it and provide any kind of notice to its customers.

19. During this time, millions of advertisers bought untold amounts of advertising on the LinkedIn platform, with absolutely no notice of ongoing or previous failures to properly track and monitor advertising performance.

20. Of course, this same issue had been ongoing for two years without notice or explanation, impacting billions of ad dollars spent with Defendant LinkedIn.

### PLAINTIFF KRISCO'S EXPERIENCE

21. Plaintiff Krisco is in the real estate business.

22. Starting in 2020, Plaintiff Krisco purchased advertisements on the LinkedIn platform to promote job opportunities.

23. Krisco became aware of the mismeasurement issues in November 2020. Without detailed information from LinkedIn, Krisco is unaware of the details of what ads were impacted, when any issues occurred, or the full nature of the damage he suffered.

### PLAINTIFF LIVLY'S EXPERIENCE

24. Plaintiff Livly is a software and mobile app developer that provides products for the property management industry.

25. Starting in 2020, Livly purchased advertisements on the LinkedIn platform to build brand awareness and drive potential customers to its website.

26. Livly became aware of the mismeasurement issues in November 2020. Without detailed information from LinkedIn, Livly is unaware of the details of what ads were impacted, when any issues occurred, or the full nature of the damage it suffered.

### CLASS ALLEGATIONS

27. **Class Definition:** Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the Class defined as follows:

> All persons or entities who, during the relevant statute of limitations period, paid to place advertisements with Defendant LinkedIn.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

28.     **Numerosity:** The exact number of members of the Class is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has refused to reimburse thousands of agents like and including Plaintiffs.

29.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

   a. Whether LinkedIn's actions were likely to deceive members of the public and those constituted a fraudulent business practice under California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200;
   b. Whether LinkedIn made material misrepresentations about its advertising services;
   c. Whether LinkedIn's failure to properly audit and verify its advertising metrics was unfair, deceptive, untrue and misleading, and constitutes an unfair and fraudulent business practice under the UCL;
   d. Whether LinkedIn breached its contract with Plaintiffs and the Class by reporting inaccurate advertising metrics.

30.     **Typicality:** Plaintiffs' claims are typical of the claims of other members of the Class, in that Plaintiffs and members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

31.     **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs' claims are representative of the claims of the other members of the Class. That is, Plaintiffs and members of the Class sustained damages as a result of Defendant's uniform conduct. Plaintiffs also have no interests antagonistic to those of the Class, and Defendant have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to the Class.

32.     **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendant have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect members of the Class uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

33.     **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies

presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

34. Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and discovery.

**FIRST CAUSE OF ACTION**
**CALIFORNIA UNFAIR COMPETITION LAW,**
**CAL. BUS. & PROF. CODE § 17200, *et seq.***

35. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

36. LinkedIn violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, by engaging in the fraudulent and unfair business acts and practices alleged, as further specified below.

37. LinkedIn's dissemination of inaccurate and inflated advertising metrics constitutes a fraudulent practice under the UCL, as it is likely to deceive Class members into believing that their paid advertisements generated a highly inflated number of impressions.

38. LinkedIn's failure to properly audit and verify the accuracy of its advertising metrics before disseminating them to Class members is unfair, deceptive, untrue and misleading, and constitutes an unfair and fraudulent business practice under the UCL. LinkedIn's practice was also contrary to legislatively declared and public policies that seek to protect consumers from misleading statements. *See, e.g.*, Federal Trade Commission Act (15 U.S.C. § 45); Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*); and California False Advertising Law (Cal Bus. & Prof. Code § 17500). The harm these practices caused to Plaintiffs and the Class members outweigh their utility, if any.

39. Prior to November 2020, LinkedIn knew or through reasonable investigation should have known that its advertising metrics were inaccurate and inflated, and had LinkedIn properly audited and verified its advertising metrics it would have known that those metrics were inaccurate

CLASS ACTION COMPLAINT    8

and inflated. The calculation errors that LinkedIn allowed to persist for over two years were obvious errors that would have been discovered by a reasonable auditing and verification process.

40. LinkedIn's failure to employ reasonable auditing and verification procedures gave it an unfair competitive advantage, as it allowed LinkedIn to provide video-advertising services at a lower cost and made those advertising services appear to be more effective than they were.

41. Plaintiffs have standing to bring these claims under the UCL because they were injured and lost money or property, including, but not limited to money paid for LinkedIn advertisements, as a result of LinkedIn's fraudulent and unfair business practices. Among other things, Plaintiffs would not have bought as much advertising services if LinkedIn had not disseminated inflated metrics and would have paid a lower price for the advertising services they did purchase.

42. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek equitable relief to prevent the continued use of LinkedIn's unfair and fraudulent practices and to restore to the Class all money LinkedIn may have acquired by means of its fraudulent and unfair business practices.

**SECOND CAUSE OF ACTION**
**FRAUD**

43. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

44. LinkedIn falsely represented the number of impressions generated by Plaintiffs' and Class members' advertisements.

45. LinkedIn either (i) knew that the metrics it was reporting to Plaintiffs and Class members was false; or (ii) reported those metrics recklessly and without regard for their truth.

46. And even if LinkedIn's statement is true—and it failed to discover the issue until August 2020—it still knowingly disseminated false metrics for several additional months. The persistence of LinkedIn's false metrics was possible only because LinkedIn did not take verification of its metrics seriously, severely understaffed the engineering team in charge of fixing errors, did not fully investigate or correct errors that were reported to it, and refused to allow third-party verification of its metrics.

47. LinkedIn intended that Plaintiffs and Class members rely on its metrics. LinkedIn promoted the metrics to users to demonstrate the supposed effectiveness of paid advertisements on its platform, knew that its metrics were relevant and material to advertisers, and concealed the fact that its recklessness had caused the metrics to be inflated because it knew that would hurt user trust and result in advertisers purchasing fewer ads.

48. Plaintiffs and Class members did rely on LinkedIn's inflated impressions metrics when deciding whether and how to purchase video advertising from LinkedIn. As a result of the inflated metrics, Plaintiffs and Class members purchased more advertising from LinkedIn than they otherwise would have and paid a higher price than they otherwise would have.

49. Plaintiffs seek an award of compensatory and punitive damages. LinkedIn's conduct as previously described constitutes oppression, fraud, or malice.

## THIRD CAUSE OF ACTION
## ACCOUNTING

50. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

51. Plaintiffs and the Class conferred a monetary benefit on Defendant in the form of monies paid for advertising.

52. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and the Class.

53. In November 2020, Defendant announced that it had not accurately captured or reported advertising metrics, or accurately charged for advertising, during at least a two-year period. While it made this announcement, it did not provide any detail to advertisers of the nature of the issue, what ads were impacted, or any other specifics of the harm.

54. Because all advertising records, data, and other metrics, of Plaintiffs and the Class's paid advertisements are exclusively within the control of Defendant, Plaintiffs and the Class have an inadequate legal remedy in that they cannot determine the precise amount of damage that they have suffered as a result of Defendant's conduct.

55. As a result, Plaintiffs and the Class seek an order requiring Defendant to provide a full and complete accounting of all transactions or records relating to Plaintiffs' and the Class's advertising on the LinkedIn platform.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Drew Krisco and Livly, Inc., individually and on behalf of the Class, prays for the following relief:

(a) An order certifying the Class as defined above, appointing Plaintiffs as the representatives of the Class, and appointing their counsel as Class Counsel;

(b) Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an order: (i) prohibiting LinkedIn from engaging in the wrongful acts described herein; (ii) requiring LinkedIn to engage third-party auditors to conduct audits and evaluations of LinkedIn's advertising metrics on a periodic basis and ordering them to promptly correct any problems or issues detected by these auditors; and (iii) requiring LinkedIn to disclose any further inaccurate advertising metrics in a timely and accurate manner.

(c) An award of all economic, monetary, actual, consequential, compensatory, and punitive damages available at law and caused by LinkedIn's conduct;

(d) An award of reasonable litigation expenses and attorneys' fees;

(e) An award of pre- and post-judgment interest, to the extent allowable;

(f) Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs Drew Krisco and Livly, Inc. request a trial by jury of all claims that can be so tried.

Respectfully submitted,

**DREW KRISCO** and **LIVLY, INC.**,
individually and on behalf of all other similarly situated individuals.

Date: November 20, 2020

By: /s/ Rafey S. Balabanian
*One of Plaintiffs' Attorneys*

CLASS ACTION COMPLAINT            11

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
Brandt Silver-Korn (SBN 323530)
bsilvercorn@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Antonio M. Romanucci (*pro hac vice pending*)
aromanucci@rblaw.net
Bryce T. Hensley (*pro hac vice pending*)
bhensley@rblaw.net
David A. Neiman (*pro hac vice pending*)
dneiman@rblaw.net
ROMANUCCI & BLANDIN, LLC
321 North Clark Street, Suite 900
Chicago, Illinois 60654
Tel: 312.458.1000
Fax: 312.458.1004

*Counsel for Plaintiffs and the Putative Class*